UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MYRA L. RAZOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:14-cv-1179-JMS-MJD |
| | ) |
| CAROLYN W. COLVIN, Commissioner of | ) |
| the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Myra L. Razor applied for Social Security Disability benefits ("SSD") and Supplemental Security Income benefits ("SSI") on November 14, 2011, alleging a disability onset date of June 30, 2010. [Filing No. 8-2 at 21; Filing No. 8-5 at 2-14.] Her claim was denied initially and on reconsideration, and a hearing was held before Administrative Law Judge Christine Coughlin (the "ALJ") on April 18, 2013. [Filing No. 8-2 at 51.] On May 28, 2013, the ALJ issued an opinion concluding that Ms. Razor was not under a disability as defined by the Social Security Act. [Filing No. 8-2 at 32.] The Appeals Council denied her request for review on June 5, 2014, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 8-2 at 2-5.] Ms. Razor filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

**I.**
**BACKGROUND**

Ms. Razor was forty-eight years old at the time she applied for disability benefits, alleging a disability onset date of June 30, 2010. [Filing No. 8-5 at 2.] She has a high school education, [Filing No. 8-2 at 61], and detailed her work history at the hearing before the ALJ, [Filing No. 8-

2 at 61-67]. Ms. Razor has previously worked as a deli clerk, a presser at a dry cleaners, an assistant deli bakery manager, a bread baker, and a waitress. [Filing No. 8-2 at 61-67.]

At the hearing, Ms. Razor testified that she stopped working after she broke her ankle, which required surgery. [Filing No. 8-2 at 62.] She testified that she later filed her disability claim because her "condition became much worse" and she "started suffering anxiety attacks." [Filing No. 8-2 at 67.] Ms. Razor testified that she rarely leaves the house because of her anxiety and inability to walk long distances. [Filing No. 8-2 at 71.] She testified regarding back pain from which she suffers, her difficulty dealing with members of the public, and her difficulty with concentration and focus. [Filing No. 8-2 at 85-92.] Ms. Razor testified that despite her medication, she has panic attacks at least three or four times per week and that on average each lasts three to four hours. [Filing No. 8-2 at 89.]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on May 28, 2013, concluding that Ms. Razor is not disabled. [Filing No. 8-2 at 21-33.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Razor meets the insured status requirements of the Social Security Act through December 31, 2015. [Filing No. 8-2 at 23.] The ALJ further found that Ms. Razor had not engaged in substantial gainful activity[1] since her alleged onset date. [Filing No. 8-2 at 23.]

- At Step Two of the analysis, the ALJ found that Ms. Razor has the following severe impairments: obesity; chronic pain secondary to spinal stenosis of the lumbar region; hypothyroidism; status post internal fixation of the medial and lateral malleolus (ankle);

---

[1] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

2

- obstructive sleep apnea; major depressive disorder; and generalized anxiety disorder. [Filing No. 8-2 at 23.]

- At Step Three of the analysis, the ALJ found that Ms. Razor did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 24-25.] The ALJ did conclude that Ms. Razor had mild restrictions in activities of daily living; moderate difficulties with social functioning; and moderate difficulties with regard to concentration, persistence, or pace. [Filing No. 8-2 at 24-25.]

- The ALJ concluded that through the date of last insured, Ms. Razor had the residual functional capacity ("RFC") to perform light work with the ability to lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk up to 6 hours in an 8 hour workday; sit up to 6 hours in an 8 hour workday; occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; occasionally push/pull with the bilateral lower extremities; occasionally interact with supervisors, co-workers, and the general public; and perform simple and routine tasks. [Filing No. 8-2 at 25-26.] Ms. Razor's RFC also had a limitation for avoiding concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, and poor ventilation. [Filing No. 8-2 at 26.] It also precluded her from work around wet or slippery surfaces. [Filing No. 8-2 at 26.]

- At Step Four of the analysis, the ALJ concluded that Ms. Razor was unable to perform any past relevant work. [Filing No. 8-2 at 31.]

- At Step Five of the analysis, the ALJ concluded that considering Ms. Razor's age, education, work experience, and RFC, there are jobs that exist in significant numbers in

the national economy that she can perform. [Filing No. 8-2 at 31.] The ALJ relied on testimony from the vocational expert ("VE") and identified jobs that Ms. Razor could perform, such as a clerk, merchandise marker, or packager. [Filing No. 8-2 at 32.]

- Based on these findings, the ALJ concluded that Ms. Razor is not disabled as defined by the Social Security Act and, thus, is not entitled to the requested disability benefits. [Filing No. 8-2 at 32.]

Ms. Razor requested that the Appeals Council review the ALJ's decision, but that request was denied on June 5, 2014, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 8-2 at 2-5.] Ms. Razor filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ

"is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's

5

decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Ms. Razor challenges the ALJ's decision on multiple bases. [Filing No. 10.] First, Ms. Razor argues that the ALJ erroneously weighed the evidence by giving little weight to a treating physician, rejecting the opinion of an agency examining psychologist, and failing to specify what evidence supported the physical and mental limitations the ALJ found. [Filing No. 10 at 15-19.] Second, Ms. Razor contends that the ALJ failed to properly evaluate her credibility. [Filing No. 10 at 20-22.] Third, Ms. Razor argues that the ALJ relied on flawed VE testimony by failing to present a hypothetical to the VE that included the mental limitations that the ALJ found for Ms. Razor. [Filing No. 10 at 23.] The Commissioner does not dispute Mr. Razor's third argument, [*see* Filing No. 17 at 11-12], and the Court agrees with Ms. Razor that the ALJ committed reversible error. Thus, the Court begins its analysis with that issue.

**A. VE Testimony**

Ms. Razor argues that the ALJ erred by failing to present a hypothetical question to the VE that included the mental limitations the ALJ found for Ms. Razor. [Filing No. 10 at 23.] Specifically, Ms. Razor points out that the ALJ found that she has moderate restrictions in concentration, persistence, or pace, and then "ostensibly limited Ms. Razor to simple and routine tasks." [Filing No. 10 at 23.] Ms. Razor cites Seventh Circuit Court of Appeals case law that has "repeatedly held that an ALJ must include a moderate restriction in concentration, persistence, or

6

pace or similar description of a claimant's limitation in this area in the accepted hypothetical to the VE when such a restriction is found." [Filing No. 10 at 23 (collecting cases).]

In response, the Commissioner claims that Ms. Razor's "sole argument concerning the ALJ's step-five finding is that the ALJ did not accommodate all of her limitations in her RFC finding." [Filing No. 17 at 12.] The Commissioner never responds to Ms. Razor's argument that the ALJ did not present a hypothetical to the VE that included the cited mental limitation the ALJ found for Ms. Razor.

In reply, Ms. Razor points out that the Commissioner "failed to respond to Plaintiff's argument that the ALJ's hypothetical to the VE failed to include all the mental limitations recognized for Ms. Razor." [Filing No. 18 at 4.] Thus, Ms. Razor asks the Court to find any response to this argument waived. [Filing No. 18 at 4.]

As an initial matter, the Court agrees with Ms. Razor that the Commissioner has waived any response to the issue to which it did not respond. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument – as [Defendants] have done here – results in waiver."); *see also Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013). The Court will address the substance of Ms. Razor's argument, however, to ensure that remand to the ALJ is necessary.

"[A] hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). "It is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform." *Id.* Although the hypothetical need not include every limitation if the expert had the opportunity to learn about the applicant's limitations through

7

independent review of the medical records or questioning at the hearing, there must be "some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations." *Id.* "When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Id.* at 1005.

The ALJ found that Ms. Razor has moderate difficulties with regard to concentration, persistence, or pace. [Filing No. 8-2 at 24-25.] As Ms. Razor correctly points out, however, none of the hypotheticals that the ALJ proposed to the VE accounted for these recognized difficulties. [*See* Filing No. 8-2 at 95-103.] After presenting the first hypothetical to the VE, the ALJ added a limitation for "simple and routine tasks," [Filing No. 8-2 at 97], but it is well-established that such a limitation is insufficient to account for moderate difficulties with regard to concentration, persistence, or pace, *see O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace"). Instead, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 620-21. While there "may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand," *id.* at 620, by failing to respond to Ms. Razor's argument, the Commissioner has waived any argument that this is one of those cases. Accordingly, the Court agrees with Ms. Razor that the ALJ in this case committed reversible error and that her case must be remanded.

## B. Additional Arguments

Given that the Court has already determined that this case must be remanded, it will not address Ms. Razor's remaining arguments in detail. That said, on remand, the ALJ should be careful to correctly apply the applicable rules for weighing treating and consultative physician opinions. For example, the Court agrees with Ms. Razor that the ALJ's decision to only give partial weight to the opinion of consultative examiner Dr. Kenneth McCoy is questionable. [Filing No. 10 at 17-18 (citing Filing No. 8-2 at 30).] Dr. McCoy concluded that Ms. Razor was moderately limited in various categories, [Filing No. 8-12 at 47-53], but the only rationale the ALJ stated for her decision to give Dr. McCoy's opinion partial weight was that Dr. McCoy "reported only mild level of difficulty with inattention and distractibility and assigned a GAF score of 51 indicative of moderate symptoms," [Filing No. 8-2 at 30]. The Court reminds the ALJ that a GAF score "does not reflect the clinician's opinion of functional capacity" and that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Moreover, as Ms. Razor points out, the American Psychiatric Association recently discontinued use of the GAF metric. [Filing No. 10 at 17-18; *see also Yurt v. Colvin*, 758 F.3d 850, 853 (7th Cir. 2014)).] Thus, the ALJ should reconsider her reliance on that score on remand.

The Court also reminds the ALJ that the treating physician rule "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). In Ms. Razor's case, the ALJ recognized that Dr. Bruce Ippel treated Ms. Razor "on a regular basis," [Filing No. 8-2 at 27], but then the ALJ

9

assigned Dr. Ippel's opinion "little weight" after noting that the opinion was "inconsistent with treatment records and the objective medical evidence," [Filing No. 8-2 at 30]. As Ms. Razor points out, the ALJ provided little additional rationale and there is no indication that she gave weight to the factors for weighing a treating source opinion set forth in 20 C.F.R. § 404.1527(d)(2). [Filing No. 10 at 17.] On remand the ALJ should take care to either give controlling weight to the opinions of Ms. Razor's treating physician or to build an adequate logical bridge explaining her decision for not doing so.

Finally, should the ALJ make an adverse credibility determination again on remand, she should take care to address the factors in SSR 96-7p and build a logical bridge from the evidence to her conclusions. [Filing No. 10 at 20-21.] If the ALJ relies on Ms. Razor's failure to follow a prescribed treatment plan, [Filing No. 10 at 22 (citing Filing No. 8-2 at 30-31)], she should ask Ms. Razor why she did not comply because there may be a reasonable explanation. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) ("But the ALJ did not ask Murphy why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program. There may be a reasonable explanation behind Murphy's actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects."). Because the ALJ did not ask these questions to Ms. Razor, the Court "cannot assess the validity of the ALJ's credibility determination." *Id.*

### IV.
#### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Razor benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

Date: March 26, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Dustin Allen Schock
BINDER and BINDER
fedcourt@binderlawfirm.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov